# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DALE BUETTNER,

    Plaintiff,

  v.                                                                      Case No. 19-CV-1888-SCD

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

Dale Buettner applied for Social Security benefits in 2014, alleging that he is disabled based on various physical and mental impairments. Following a hearing, an administrative law judge (ALJ) denied benefits in 2018, finding that Buettner remained capable of working notwithstanding his impairments. Buettner now seeks judicial review of that decision, arguing that the ALJ's step-five finding is not supported by substantial evidence because neither the residual functional capacity (RFC) assessment nor the hypothetical questions posed to the vocational expert (VE) at the hearing accounted for all his mental-health limitations. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. I agree with the Commissioner. Accordingly, his decision will be affirmed.

## BACKGROUND

In December 2014, Buettner applied for disability insurance benefits and supplemental security income from the Social Security Administration (SSA), alleging that he became

disabled on October 4, 2014 (when he was thirty-six years old). R. 36, 347–48.[1] Buettner asserted that he was unable to work due to the following medical conditions: mental issues, bipolar disorder, mood disorder, post-traumatic stress disorder, attention-deficit/hyperactivity disorder, anxiety, depression, possible glaucoma, and arthritis in his neck and right ankle. R. 414. Buettner's applications were denied first at the state-agency level by the Wisconsin Disability Determination Bureau. R. 86–139.

Edmund Musholt, PhD, evaluated Buettner's mental impairments for the state agency during its initial review. In the Psychiatric Review Technique (PRT) portion of his assessment, Dr. Musholt concluded that Buettner had "moderate" limitations in maintaining social functioning and maintaining concentration, persistence, or pace. R. 94, 106. Dr. Musholt also completed a Mental Residual Functional Capacity Assessment (MRFCA) form. In the "Summary Conclusions" section of that form, he checked boxes indicating that Buettner was "moderately limited" in the following functional areas:

- The ability to maintain attention and concentration for extended periods;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to interact appropriately with the general public; and
- The ability to accept instructions and respond appropriately to criticism from supervisors.

R. 96–97, 108–09. Dr. Musholt went on to explain in the "Functional Capacity Assessment" portion of the MRFCA form that Buettner "would have some moderate limitations in maintaining concentration for an extended period of time," "would miss a day on occasion

---

[1] The transcript is filed on the docket at ECF No. 10-3 to ECF No. 10-43.

due to not handling stress," "would have moderate limitations in the above [social] situations," and "has a hard time with stress so this would limit him with criticism from supervisors." *Id.*

Therese Harris, PhD, evaluated Buettner's mental impairments for the state agency upon Buettner's request for reconsideration. Dr. Harris's PRT form contained the same findings as Dr. Musholt. R. 118, 131. Dr. Harris also checked the same boxes Dr. Musholt did in the "Summary Conclusions" section of the MRFCA form. R. 120–22, 133–35. However, Dr. Harris expanded on Dr. Musholt's conclusions in the "Functional Capacity Assessment" portion of that form, indicating that Buettner was "[a]ble to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule" and was "[a]ble to adequately manage interaction with the public, to manage appropriate interpersonal interactions in the workplace, and is able to accept reasonable supervision." R. 121–22, 134–35.

After his applications were denied at the state-agency level, Buettner requested an administrative hearing before an ALJ. R. 186–87. Buettner appeared via video before ALJ Wayne Ritter on July 3, 2018. R. 44–83. He was not represented at the time, and he waived his right to representation. R. 331. Buettner testified that he suffered from back problems, with radiating symptoms in both legs; diabetic neuropathy; and issues with his right shoulder and neck. R. 52–63. He also reported seeing a psychiatrist and taking psychiatric medications for his mental-health issues. R. 63–67. Bob Hammond, an impartial VE, testified at the hearing as well. *See* R. 75–82. Hammond testified that Buettner had four past relevant jobs: machinist (performed at the medium exertional level), material handler (heavy), stock clerk (heavy), and sorter (light). R. 76. According to Hammond, a hypothetical person with Buettner's age,

education, and work experience could not perform any of his past jobs if he were limited to a restricted range of light work, but he could work as an injection molder, a press operator, or a housekeeper/maid in the hotel/motel industry. R. 79–81. When asked about absenteeism, Hammond testified that employers customarily will tolerate one absence per month after the ninety-day probationary period and no more than ten absences in a twelve-month period. R. 81–82.

Applying the standard five-step process, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), on October 12, 2018, the ALJ issued a written decision concluding that Buettner was not disabled. *See* R. 22–43. The ALJ determined that Buettner had not engaged in substantial gainful activity since October 4, 2014, his alleged onset date. R. 27. The ALJ found that Buettner's severe impairments—diabetes mellitus with neuropathy, disorders of the back and neck, status post lumbar laminectomy, disorders of the right shoulder, personality disorder, depressive disorder, and ADHD—limited his ability to work but didn't meet or equal the severity of a presumptively disabling impairment. R. 27–30. Specifically, with respect to mental impairments, the ALJ determined that Buettner had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing himself. R. 29–30.

The ALJ next determined that Buettner had the RFC to perform light work, but (with respect to his mental health) he "is limited to simple, routine, repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public, coworkers, and supervisors." R. 30. In assessing his RFC, the ALJ assigned "significant weight" to the opinions of Dr. Musholt and Dr. Harris.

4

R. 34. The ALJ determined that, in light of the above RFC, Buettner could not perform any of his past relevant jobs, but, based on the VE's testimony, he could work as an injection molder, a press operator, and a housekeeper/maid; therefore he was not disabled. R. 35–36.

After the SSA's Appeals Council denied review, *see* R. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016), Buettner filed this action on December 24, 2019. ECF No. 1. The matter was reassigned to me in April 2020 after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 11, 12. The matter is fully briefed and ready for disposition. *See* ECF Nos. 13, 18, 19.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by

substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95

(1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Buettner argues that the ALJ's RFC assessment and the hypothetical questions posed to the VE did not account for all his mental-health limitations. Specifically, he contends the ALJ failed to account for all the limitations assessed by Dr. Musholt, despite purportedly assigning significant weight to his opinion. Buettner further contends the ALJ failed to translate his mental-health symptoms into limitations related to concentration, persistence, or pace—"CPP" in the lexicon of Social Security law. These alleged errors are material, according to Buettner, because "the vocational expert was not properly oriented" and thus, his testimony cannot constitute substantial evidence in support of the ALJ's step-five finding. *See* ECF No. 13 at 9–16.

### I.  Dr. Musholt

During the initial state-agency review, Dr. Musholt opined that Buettner had moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. R. 94, 106. Dr. Musholt explained that, with respect to CPP, Buettner "would have moderate limitations in maintaining concentration for an extended period of time" and "would miss a day on occasion due to not handling stress." R. 96, 108. As for Buettner's difficulties with social functioning, Dr. Musholt indicated that Buettner had a moderate limitation interacting appropriately with the general public and accepting instructions and responding appropriately to criticism from supervisors. R. 97, 109. He further indicated that Buettner "has a hard time with stress so this would limit him with criticism from supervisors." *Id.* The ALJ assigned significant weight to Dr. Musholt's opinion, finding it "well-supported

7

by the treatment notes of Dr. Tuskenis[2] and [Buettner's] own reports of his activities." R. 34 (citing Exhibit 6E [R. 441–49]).

Buettner maintains that the ALJ committed reversible error by failing to incorporate Dr. Musholt's specific limitations in the RFC assessment or explain why such findings were excluded. *See* ECF No. 13 at 13–15. I disagree. *First*, "the determination of a claimant's RFC is a matter for the ALJ alone . . . to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). The ALJ therefore was not required to adopt all of Dr. Musholt's opined limitations, notwithstanding the overall weight he attributed to that assessment.

*Second*, the ALJ relied on the opinions of *both* state-agency psychologists, noting that they "both found the claimant has no significant limitations with regard to understanding, remembering, and carry out [sic] simple instructions but would have moderate limitations with regard to detailed instructions and interaction with the public and supervisors." R. 34. Dr. Harris' opinion, which came later than Dr. Musholt's, incorporated each of Dr. Musholt's earlier findings into her own assessment, both on the PRT and the MRFCA forms. *Compare* R. 94, 96–97 *with* R. 118–19, 120–22. However, because Dr. Musholt's narrative findings were, by Buettner's own admission "a bit vague," *see* ECF No. 13 at 13, Dr. Harris went further: she took the extra step of translating those findings into clearer functional terms, *see* R. 121 ("All evidence reviewed and affirm initial psych assessment with new language on the MRFC limitation narratives added for purpose of POMS compliance."). Dr. Harris indicated that, despite having moderate difficulties maintaining extended concentration and occasionally missing a day of work due to his difficulties handling stress, Buettner could "maintain focus,

---

[2] Elena Tuskenis, MD, was Buettner's treating psychiatrist. *See, e.g.*, R. 1071–73.

pace, and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule." R. 120–21, 133–34. Buettner does not argue that the ALJ's RFC assessment—which limited him to "simple, routine, repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes," R. 30—failed to account for Dr. Harris's opinion that, given normal breaks, Buettner retained the capacity to sustain concentration and persistence required of a full-time job. Thus, Dr. Harris's opinion contradicts Buettner's speculation that his occasional absence due to stress may preclude all employment.

Likewise, Dr. Harris indicated that, despite having moderate difficulties in social functioning, Buettner was "[a]ble to adequately manage interaction with the public, to manage appropriate interpersonal interactions in the workplace, and is able to accept reasonable supervision." R. 121–22, 134–35. The ALJ incorporated this finding into the RFC assessment, limiting Buettner to "occasional interaction with the public, coworkers, and supervisors." R. 30. Buettner asserts that this limitation is insufficient because it limited only the amount of time and not the nature of his potential contact with supervisors. *See* ECF No. 15 at 14. This assertion, however, is contradicted by the findings of Dr. Harris, who opined that Buettner remained capable of accepting reasonable supervision despite having a moderate limitation accepting instructions and responding appropriately to criticism from supervisors.

Buettner asserts that the "additional limitations" opined by Dr. Harris are "irrelevant" to the ALJ's consideration of Dr. Musholt's findings because the ALJ made "no differentiation between the two [psychologist's] opinions," *see* ECF No. 13 at 14–15, and because the ALJ did not limit Dr. Musholt's opinion "to the extent it was consistent with Dr.

9

Harris's opinion," *see* ECF No. 19 at 12. As recounted above, however, the two state-agency psychologists' opinions are not inconsistent, and so this isn't a case where the ALJ is inexplicably preferring one source's opinion in lieu of another's. The record makes clear that Dr. Harris's narrative functional capacity assessment clarified and replaced the one provided earlier by Dr. Musholt; it did not contradict it. *See* R. 122. The ALJ, in giving both opinions "significant weight," essentially adopted the more specific (but consistent) limitations found in Dr. Harris' opinion. Ultimately, Buettner has not demonstrated that the ALJ erred in failing to adopt the vague limitations contained in Dr. Musholt's earlier opinion.

**II.     CPP Limitations**

At step three of the sequential evaluation process, the ALJ determined that Buettner's mental impairments caused a moderate limitation in his ability to concentrate, persist, or maintain pace. R. 29. His RFC—the same one presented to the VE at the administrative hearing, R. 79–81—limited Buettner to "to simple, routine, repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and occasional interaction with the public, coworkers, and supervisors." R. 30. Given this RFC, as well as the VE's testimony, the ALJ determined at step five that Buettner could work as an injection molder, a press operator, and a housekeeper/maid. R. 35–36.

Buettner maintains that the mental limitations posed to the VE and included in the ALJ's ultimate RFC do not address CPP. He further maintains that the ALJ failed to translate into the RFC assessment his specific finding at step three that Buettner had a moderate limitation with concentrating and completing tasks and could pay attention for only five seconds. Because "the hypothetical question was inadequate," the argument goes, "the

10

Case 2:19-cv-01888-SCD    Filed 11/04/20    Page 10 of 13    Document 20

vocational expert was not properly oriented," and his testimony "could not be used to satisfy the Commissioner's burden of proof at step five." *See* ECF No. 15 at 9–13, 15–16.

The Seventh Circuit has made clear that, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Although no "magic words" are required, "[o]ften, 'employing terms like "simple, repetitive tasks"' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace.'" *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). Nevertheless, a hypothetical that omits the terms "concentration, persistence, and pace" is sufficient "when it [is] manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.'" *Kuykendoll*, 801 F. App'x at 438 (quoting *O-Conner-Spinner*, 627 F.3d at 619). Likewise, "an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (citing *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002)).

The ALJ did not commit reversible error with respect to Buettner's moderate limitations in CPP. As explained above, in fashioning Buettner's mental RFC, the ALJ gave significant weight to the opinion of Dr. Harris, who stated in the narrative portion of the MRFCA form that Buettner was "[a]ble to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hr workday within a normal 40-hour work schedule." R.

34, 121. Buettner has not argued that the hypothetical given to the VE (and included in the ultimate RFC assessment)—limiting him to simple, routine, and repetitive tasks; no fast-paced work; only simple work-related decisions; and occasional workplace changes—did not adequately capture Dr. Harris's translation.

Moreover, the ALJ's mental RFC is also consistent with the rest of the record. The ALJ concluded that Buettner's ADHD symptoms—the cause of his CPP limitations—were accounted for by the above RFC. *See* R. 34. As support, the ALJ noted that Buettner demonstrated intact attention and concentration during his mental-status examinations, R. 34 (citing Exhibit 12F/36–41 [R. 1063–68]); reported he could follow a recipe and manage his finances, R. 29 (citing Exhibit 6E); and was able to follow "the hour-long hearing proceedings well and supplied relevant answers without prodding or apparent difficulty," R. 29.

Buettner's insistence that the ALJ failed to adequately account for his step-three findings in the mental RFC rests on a misreading of the decision. The ALJ did not determine at step three that Buettner had difficulty concentrating and completing tasks and could pay attention for only five seconds. Rather, the ALJ referenced those subjective reports and contrasted them with other evidence showing that Buettner's capabilities were not as limited as alleged, including his ability to follow a recipe and manage his finances, a mental-status exam showing intact attention and concentration, and the ALJ's own observations at the administrative hearing. *See* R. 29. The ALJ was not required to include in the mental RFC subjective limitations that he determined were inconsistent with the record.

12

Case 2:19-cv-01888-SCD   Filed 11/04/20   Page 12 of 13   Document 20

## CONCLUSION

For all the foregoing reasons, I find that Buettner has not demonstrated that the ALJ committed reversible error in formulating his mental RFC. Thus, the Commissioner's decision is **AFFIRMED**. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 4th day of November, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge